Catron, C. J.
delivered the opinion of the court.
In August, 1821, Bumpas recovered a judgment against Gregory, in Giles county, for three hundred and forty-seven dollars. Execution was issued, and levied upon four entries of land, No. 30, for one hundred and sixty acres; number 31, for one hundred and sixty acres; number 48, for three hundred and sixteen acres, and number 161, for three hundred and sixteen acres.
The lands were advertised, and on the 8th August, 1822, were sold. Number 30, for $57; number 31, for $53; number 48 for $130, and number 161, for $102.
*55 The ludgment, was entered for the full amount of a bul single; whereas, a credit ought to have been endorsed for $116, which was given by the plaintiffs counsel on the judgment, reducing the execution to 258 dollars 74 cents.
At the sheriff’s sale, Caldwell bid off the entry, number 161. The sheriff called upon him for the money some days after; when he said he had bid it in for Bum-pas, the plaintiff in the execution, and gave the sheriff an order to transfer it to Bumpas. There was no evidence that Gregory had any knowledge of this. He had, before the sale, removed to Alabama. The entry, number 161, was worth about $1,000. He presently came to CaldweE to redeem, and offered him the $102; the amount bid, with ten per cent, interest. But Caldwell informed him he had never paid the sheriff any thing, and had transferred his bid to Bumpas.
The previous bids by Bumpas, for entries numbers 30, 31, and 48', had reduced the' execution to $15. Bum-pas had paid the sheriff no part of the excess between $102 and $15; $87 was, therefore, due Gregory. The latter, therefore, knowing he did not owe in fact the $102 to Bumpas, offered him $50 as redemption money, but Bumpas treated the offer with scorn, and asked Gregory if he intended to insult him.
The execution is lost, and what facts appeared upon it we cannot tell; nor is it known whether it ever was returned; very probably not. Gregory had certain information that Caldwell had purchased his land; to him he had the right prima facie to malte the tender. He did make it in good faith. He was then sent to Bumpas to pay the money to him, who. refused to receive the money tendered, or have any intercourse with Gregory. Under diese circumstances, we think Gregory clearly had the right to redeem entry No. 161, if the money tendered was as much as was due.
But then, he placed himself in an attitude to force *56 Bumpas into a court of equity. The sheriff did not transfer the entry and warrant to Caldwell or Bumpas; and Gregory took the plat and certificate to the register’s office, a|id obtained a grant. The sale had vested the title in the purchaser, and Gregory has no more right to obtain a grant than a third person. He, therefore, holds as trustee for Bumpas, who must have the land decreed to him, unless Gregory redeems it, and retains the title by extinguishing Bumpas’ equity.
The question then arises, did Gregory tender redemption money enough to Bumpas? And this raises another question: What was the effect of Bumpas’ bids for entries, Nos. 30, 31, and 48. Before the levy, two of these entries had been vacated on the surveyor’s books (the then practice); the warrants withdrawn by Gregory, and other entries made by virtue of them. Two of these entries covered part of the same lands, covered by the vacated entries. For so much, it is insisted, the purchaser at execution sale acquired title. Gregory proceeded to obtain grants on the entries last made; and for so much land as was covered by the former entries, the chancellor decreed specific performance; divested the title out of Gregory, and vested it in Bumpas.
The sheriff levied upon, advertised, and sold, all the right, title, and interest, that John Gregory had in, and to, Nos. 30. 31, and 48; it is insisted for Bumpas, this was a sale of the right and interest Gregory had to the land described by the entries, and that it matters not by what title Gregory held it, such title was vested in the purchaser; and so thought the chancellor. And such would have been the fact, had the sheriff sold the lands by metes and bounds, as granted lands; but with entries it is otherwise. Before the passage of the act of 1794, ch. 5, sec. 7, the equitable title vested by an entry, was not subject to the lien- of judgments, and the satisfaction of executions at law. That act declares they may be levied on and sold as granted lands; and the mode of conveyance by the *57 sheriff, shall be by an assessment of the. warrant, and „ , , J , , ’ „„„ transfer or the entry to the purchaser. 1 he act of 1809. amends the act of 1794, and provides that the surveyors shall permit such transfers, and shall make out plats and certificates of survey, in the name of the assignee and purchaser, on which the register shall issue a grant to him; and if the assignee shall discover, that the entry so assigned to him, or any part thereof, has been taken away by a prior entry, he shall have the same power to remove the warrant, and enter it on vacant land, that any other owner of a warrant has. The act of 1819, ch. 48, authorizes the sheriff to transfer the plat and certificate, if the entry has been surveyed.
The sheriff could only sell that to which he could make title, or cause title to be made. The legal right to the land was in the state; and the equity to obtain that right, is what the sheriff sells in cases of entries. What equity did Bumpas acquire by his bids? Certainly no interest in the warrant; for that was withdrawn from the entry. But it was supposed by the chancellor, he took an interest in the land to any extent Gregory had an interest. Suppose this to be so, and that Gregory had not vacated the entry, and Bumpas had taken title to it, and the warrant on which it was founded, and that the entry had lapped over an older grant of Gregory; then, pursuing the chancellor’s idea, Bumpas would have held the land by virtue of Gregory’s grant; and by virtue of the act of 1809, could have raised his warrant and located it elsewhere. Such idea never entered the mind of the legislature. Whatever title is vested in the debtor, by an entry, the purchaser acquires at an execution sale of an entry and warrant. If there be land appropriated, he takes it; if none, he takes the warrant with authority to locate it elsewhere. If there be neither land or warrant, he takes nothing. And such is Bumpas’ case. This part of the decree must, therefore, be reversed.
One of the entries, No. 48, had been sold by Gregory *58 t0 Smith, before the execution sale, and was not subject to the levy.
Bumpas having, therefore, not acquired any title to the lands sold, save to the entry No. 161, for 316 acres, and holding the tide to' this, subject to Gregory’s right to redeem, by virtue of the statute, the next question is, on what terms can Gregory be let in to redeem? Shall he pay the full amount of the bids of Bumpas, for the void entries, and the entry sold to Smith, or only the balance of the judgment, deducting the sums bid for such entries.
It is insisted, for Bumpas, that Gregory stood by and permitted him to purchase an apparent title, without disclosing the fact, that the debtor had no interest subject to levy and sale; that Bumpas extinguished the judgment by his bids, and on die foot of fraud, can come into equity for relief. But, 2. If not on the foot of fraud, he may on the ground of natural justice and equity; that it had been so holden in Kentucky, in M’Gee vs. Ellis and Browning, 4 Littel 244; 5 Littel 136.
On the other hand, it is insisted, that 636 acres of land had been bid off by Bumpas, for the paltry sum of 240 dollars; the lands being worth at the least, according to the proof, three dollars the acre. That the bill was filed to enforce the sale, and obtain property, including entry No. 161, ten times the value of the judgment. And now that the attempt was defeated, the complainant assumed he had been defrauded, when no such thing had been alleged in the bill, or was any issue or proof made, bringing up for decision such grounds of relief. 2. That it had been holden, on authority of the British adjudications, in Henderson vs. Overton (2 Yerg. 396), that caveat emp~ tor was the undoubted rule in relation to titles, in cases of execution sales of land; that there is no warranty of title by any one; but if there was a warranty of title, as is supposed in Kentucky, on part of the debtor whose debt had been discharged, still the bill presented no such case, or claimed relief on any such grounds.
*59 It is certainly true, the pleadings present no case to raise the questions referred to in argument; questions as delicate and difficult as could well be presented. But to ■obviate all difficulty, the defendant Gregory, offers to pay the full amount of the judgment originally due Bumpas, as the condition on which entry No. 161 shall be redeemed. Which offer the court directs be acceded to, and that each party pay their own costs.